Jeffrey A. Johnson, OSB No. 82292
Internet e-mail:jjohnson@cvk-law.com
COSGRAVE VERGEER KESTER LLP
805 SW Broadway, 8th Floor
Portland, Oregon 97205
Telephone:    (503) 323-9000
Facsimile:    (503) 323-9019

Patrick J. Carome
Internet e-mail:patrick.carome@wilmerhale.com
Samir Jain
Internet e-mail:samir.jain@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2445 M Street NW
Washington, D.C.  20037
Telephone:    (202) 663-6000
Facsimile:    (202) 663-6363

*Counsel for Defendant Yahoo Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CECILIA L. BARNES,** | **Civil Action No. 6:05-CV-926-AA** |
| **Plaintiff,** | |
| v. | **DEFENDANT YAHOO INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** |
| **YAHOO! INC.,** | |
| **Defendant.** | **REQUEST FOR ORAL ARGUMENT** |

Dockets.Justia.com

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT .......................................................................................................................5

I.  THE PLAINTIFF'S CLAIM IS BARRED BY SECTION 230. .......................................5

    A.  Section 230 Broadly Immunizes Entities Like Yahoo! From Liability for Third-Party Content. ...................................................................................................6

    B.  Each of the Statutory Elements of Immunity Is Apparent on the Face of the Complaint....................................................................................................................10

        1.  Yahoo! Is a "Provider" of an "Interactive Computer Service.".................11

        2.  The Bogus Profiles and Chat Room Dialogue Allegedly Created by Plaintiffs' Ex-Boyfriend Were "Information Provided By Another Information Content Provider." ..................................................................11

        3.  The Complaint Impermissibly Seeks to Treat Yahoo! as the "Publisher or Speaker" of the Third-Party Information.............................12

    C.  Congress Intended Section 230 to Protect Service Providers from Precisely This Type of Lawsuit. ..............................................................................................17

        1.  Imposing Liability on Yahoo! Would Undermine Congress's Objective of Encouraging the Development and Availability of Innovative Online Services and Forums that Foster Free Speech by Millions of Citizens..................................................................................17

        2.  Imposing Liability on Yahoo! Would Undermine Congress's Goal of Encouraging Service Providers To Engage in Self-Regulation.................20

II.  EVEN IF THE PLAINTIFF'S CLAIM WERE NOT BARRED BY SECTION 230, IT WOULD STILL FAIL AS A MATTER OF STATE LAW..............................................23

CONCLUSION ..................................................................................................................28

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Arney v. Baird,*
661 P.2d 1364 (Or. Ct. App. 1983)................................................................24

*Artiglio v. Corning Inc.,*
76 Cal. Rptr. 2d 479 (Ct. App. 1998) ............................................................24

*Barrett v. Fonorow,*
799 N.E.2d 916 (Ill. App. Ct. 2003) ..............................................................7

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003) ................................................6, 10, 17, 18, 20

*Ben Ezra, Weinstein, & Co. v. America Online, Inc.,*
206 F.3d 980 (10th Cir. 2000), *cert. denied,* 531 U.S. 824 (2000)..........7, 10, 12, 13, 16

*Blumenthal v. Drudge,*
992 F. Supp. 44 (D.D.C. 1998).........................................................7, 12, 22

*Carafano v. Metrosplash.com, Inc.,*
339 F.3d 1119 (9th Cir. 2003) ............................................................. passim

*Cholla Ready Mix, Inc. v. Civish,*
382 F.3d 969 (9th Cir. 2004), *cert. denied,* 125 S. Ct. 1828 (U.S. 2005)......................2

*City of Santee v. County of San Diego,*
259 Cal. Rptr. 757 (Ct. App. 1989).............................................................26

*Clegg v. Cult Awareness Network,*
18 F.3d 752 (9th Cir. 1994) ......................................................................26

*Corbis Corp. v. Amazon.com, Inc.,*
351 F. Supp. 2d 1090 (W.D. Wash. 2004).......................................................7

*Doe v. America Online, Inc.,*
783 So. 2d 1010 (Fla.), *cert. denied,* 534 U.S. 891 (2001)................................7, 12, 16

*Donato v. Moldow,*
865 A.2d 711 (N.J. Super. Ct. App. Div. 2005)...............................................7

*Dundas v. Lincoln County,*
618 P.2d 978 (Or. Ct. App. 1980)...............................................................25

*Felton v. Schaeffer*,
279 Cal. Rptr. 713 (Ct. App. 1991)................................................................25

*Fields v. Legacy Health Sys.*,
_ F.3d _, Nos. 03-35386, 03-35587, 2005 WL 1459541 (9th Cir. June 22, 2005)........................24

*Flowers v. Carville*,
310 F.3d 1118 (2002)................................................................................16

*Gentry v. eBay Inc.*,
121 Cal. Rptr. 2d 703 (Ct. App. 2002) .............................................7, 11, 16

*Green v. America Online, Inc.*,
318 F.3d 465 (3d Cir. 2003), *cert. denied*, 540 U.S. 877 (2003)........................7, 12, 16

*Jane Doe One v. Oliver*,
755 A.2d 1000 (Conn. Super. Ct. 2000), *aff'd*, 792 A.2d 911 (Conn. App. Ct. 2002) ..............7, 16

*Kathleen R. v. City of Livermore*,
104 Cal. Rptr. 2d 772 (Ct. App. 2001) ............................................................7

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)................................................................................24

*Marczeski v. Law*,
122 F. Supp. 2d 315 (D. Conn. 2000)..............................................................7

*McDonald v. Title Ins. Co. of Or.*,
621 P.2d 654 (Or. Ct. App. 1983)................................................................24

*MCW, Inc. v. Badbusinessbureau.com, LLC*,
No. Civ. A: 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004) .................................7

*Noah v. AOL Time Warner Inc.*,
261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd*,
No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004)................................................7

*Novak v. Overture Servs. Inc.*,
309 F. Supp. 2d 446 (E.D.N.Y. 2004) ..............................................................7

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*,
17 F. Supp. 2d 1170 (D. Or. 1998) ................................................................25

*PatentWizard, Inc. v. Kinko's Inc.*,
163 F. Supp. 2d 1069 (D.S.D. 2001) .............................................7, 12, 16

*Perfect 10, Inc. v. CCBill, LLC,*
340 F. Supp. 2d 1077 (C.D. Cal. 2004) ...................................................7

*Quackenbush v. Portland Gen. Elec. Co.,*
894 P.2d 535 (Or. Ct. App. 1995)........................................................24

*Roskowski v. Corvallis Police Officers' Ass'n,*
No. Civ. 03-474-AS, 2005 WL 555398 (D. Or. Mar. 9, 2005) ...................7, 10, 11, 12

*Schneider v. Amazon.com, Inc.,*
31 P.3d 37, 43 (Wash. Ct. App. 2001)..............................................7, 11, 16

*Smith v. Intercosmos Media Group, Inc.,*
No. Civ. A. 02-1964, 2002 WL 31844907 (E.D. La. Dec. 17, 2002)........................7, 16

*Smith v. California,*
361 U.S. 147 (1959)..........................................................................21

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) ...............................................................27

*Stoner v. eBay Inc.,*
No. 305666, 2000 WL 1705637 (Cal. Super. Ct. Nov. 1, 2000) ........................7

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.,*
No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ...................21

*Von Batsch v. American Dist. Tel. Co.,*
222 Cal. Rptr. 239 (Ct. App. 1985)........................................................26

*Whitney Information Network, Inc. v. Xcentric Ventures, LLC,*
No. 2:04CV47FTM33SPC, 2005 WL 1677256 (M.D. Fla. July 14, 2005)....................7

*Williams v. California,*
664 P.2d 137 (Cal. 1983) ...............................................................24, 25

*Zeran v. America Online, Inc.,*
129 F.3d 327 (4th Cir. 1997), *cert. denied,* 524 U.S. 937 (1998).......................... passim

*Zima v. North Colonie Cent. Sch. Dist.,*
639 N.Y.S.2d 558 (App. Div. 1996).......................................................27

## STATUTES

47 U.S.C. § 230.................................................................... passim

47 U.S.C. § 941 ..................................................................................................9

141 Cong. Rec. 22,046 (1995) ................................................................18, 20

H.R. Conf. Rep. No. 104-458 (1996) ..............................................................21

H.R. Rep. No. 107-449 (2002) ........................................................................10

## TREATISES

Restatement (Second) of Conflict of Laws § 145 (1971) ................................24

Restatement (Second) of Torts § 323 (1965) ....................................24, 25, 27

Restatement (Second) of Torts § 558 (1977) ..................................................15

Restatement (Second) of Torts § 623A (1977) ................................................15

Restatement (Second) of Torts § 652 (1977) ..................................................15

Restatement (Second) of Torts § 621 & cmt. n ..............................................16

Restatement (Second) of Torts § 652H & cmt. a-b ........................................16

# INTRODUCTION

According to the Complaint, this case arises out of a cruel and persistent hoax that was perpetrated on the Plaintiff Cecilia Barnes by her ex-boyfriend. In particular, for reasons that are not alleged, the Plaintiff's ex-boyfriend allegedly engaged in a campaign to harass the Plaintiff using the Internet by setting up a series of online "profiles" — publicly available web pages on which a person typically displays personal information about herself such as name, address, age, hobbies, pictures, or other content — that contained information about the Plaintiff and falsely appeared to have been posted by her. These profiles included nude pictures of the Plaintiff and information about how to contact her at her workplace. Because the ex-boyfriend also allegedly impersonated the Plaintiff in discussions in online chat rooms, "soliciting" other men by directing them to the unauthorized profiles, the Plaintiff allegedly was visited and harassed at her office by unwanted suitors.

Rather than sue the ex-boyfriend who perpetrated this harassment, the Plaintiff has sued Yahoo! Inc. ("Yahoo!"), one of the world's largest and best known providers of interactive computer services. She has done so even though Yahoo! indisputably had no role in creating or developing any of the online profiles or the chat room conversations about which she complains. Instead, Yahoo!'s involvement in this case stems from the fact that the ex-boyfriend allegedly used Yahoo!'s Internet-based services to post the profiles and engage in the chat room conversations. Although the Plaintiff concedes that Yahoo! had "no initial responsibility to act" as a result of the ex-boyfriend's abuse, she claims that Yahoo! gratuitously assumed a legal duty to act when one of its employees allegedly told her that Yahoo! would "stop" the unauthorized profiles, and that thereafter Yahoo! negligently failed to fulfill that alleged duty.

Congress, however, has immunized interactive service providers such as Yahoo! from precisely this type of litigation. As numerous courts — including this Court and the Court of Appeals for the Ninth Circuit — have uniformly held, a federal statute, 47 U.S.C. § 230 ("Section 230"), broadly prohibits the imposition of civil liability on interactive service providers for harms caused by content created and developed by third parties. In particular, Section 230 bars lawsuits, like this one, that seek to treat entities such as Yahoo! "as the publisher or speaker of information provided by another information content provider." 47 U.S.C. § 230(c)(1). In passing this statute, Congress made the policy decision that, in general, liability for harmful online content should be imposed on only the actual wrongdoers — that is, the originators of the harmful content — and not the service providers whose electronic systems were used (or abused) by such wrongdoers.

Under the plain language of the statute and well-established precedent, Section 230 immunity applies with full force here and requires dismissal of the Complaint. Further, even apart from the fact that Section 230 immunizes Yahoo! from liability to Plaintiff, her claim also is fatally defective as a matter of state law.

## STATEMENT OF FACTS

According to the Complaint,[1] the Plaintiff's ex-boyfriend — who is not identified by name in the Complaint and has not been named as a defendant — victimized the Plaintiff through an involved hoax. Posing as the Plaintiff, the ex-boyfriend allegedly created and made available on the Internet a series of online "unauthorized profiles" that falsely appeared to have

---

[1] Although Yahoo! does not concede the truth of the Complaint's allegations, it treats them as true for the limited purpose of this motion to dismiss. *See Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 972 n.1 (9th Cir. 2004) ("The background is drawn primarily from the complaint, because the court considers the facts alleged therein to be true for the purposes of reviewing a dismissal pursuant to Fed. R. Civ. P. 12(b)(6)."), *cert. denied,* 125 S. Ct. 1828 (U.S. 2005).

been posted by the Plaintiff. (Compl. ¶ 3.) These profiles "consisted of nude pictures of Plaintiff" that allegedly were "taken without her knowledge or authorization" and also included the Plaintiff's "work contact information." (*Id.*) The Complaint further alleges that the ex-boyfriend went into online chat rooms where, engaging in real-time "online discussions," he "pos[ed] as Plaintiff and . . . direct[ed] the men he corresponded with to the profiles." (*Id.*) As a result of her ex-boyfriend's alleged trickery, the Plaintiff asserts that "unknown men would arrive without warning at her work expecting to engage in sexual relations with her." (*Id.*)

Defendant Yahoo! is an interactive computer service provider with "over 165 million registered users" and "345 million unique visitors . . . each month." (Compl. ¶ 10.) Any person with access to the Internet may, at no charge, register as a Yahoo! user, obtain an online Yahoo! identifier and account, and then use them to engage in various online activities, such as sending and receiving e-mails, participating in Yahoo! chatroom discussions, and posting a self-authored online "profile" that can display a wealth of personal information about the user. Yahoo!'s involvement in this lawsuit stems from the fact that the Plaintiff's ex-boyfriend allegedly used Yahoo!'s "profiles" and "chat" features to carry out his hoax. (*Id.* ¶ 3.)

According to the Plaintiff, she tried for several months to get Yahoo! to remove the allegedly unauthorized profiles. Specifically, on several occasions beginning in January 2005, she allegedly "mailed . . . a signed statement" to Yahoo! "denying any involvement with the unauthorized profiles" and asking Yahoo! to "remove" them. (Compl. ¶¶ 4-6.) Each time, Yahoo! allegedly "did not respond." (*Id.*) Nearly three months later, at the end of March, the ex-boyfriend's campaign of harassment allegedly was still ongoing and a local Portland news program was going to air a report about it. (*Id.* ¶ 7.) That upcoming report allegedly "precipitated" a telephone call from Mary Osako, a Yahoo! employee, to the Plaintiff. (*Id.*)

According to the Complaint, during that call Ms. Osako first asked the Plaintiff to fax to her the statements about this problem that the Plaintiff had previously sent to Yahoo!. Ms. Osako then allegedly pledged that she would "walk the statements over to the division responsible for stopping unauthorized profiles" and that "Yahoo! would put a stop to the unauthorized profiles." (*Id.*)

The Plaintiff concedes that Yahoo! "had no initial responsibility to act" at all in response to the content allegedly posted by the ex-boyfriend. (Compl. ¶ 9.) Further, the Complaint does not allege — nor could it — that Yahoo! had any role whatsoever in the creation or development of any of the allegedly false profiles or any of the chat room conversations at issue. Instead, the Plaintiff claims that once Ms. Osako allegedly "undert[ook] to assist plaintiff," Yahoo! "assumed an affirmative duty to do so with care." (*Id.* ¶ 7.) According to the Plaintiff, Yahoo! breached that duty when, following Ms. Osako's call to the Plaintiff, Yahoo! allegedly "negligently and carelessly failed to remove the unauthorized profiles and prohibit them from being posted again." (*Id.* ¶ 9.) The Plaintiff further claims that because she allegedly "relied on [Yahoo!] to provide assistance," she "made no other arrangements for assistance." (*Id.* ¶ 8.) The Complaint does not indicate what those "other arrangements" would have been, whether she had made any similar "arrangements" during the preceding three months in which she acknowledges that Yahoo! did not have any legal duty to act, how long she refrained from making such arrangements after Yahoo! allegedly failed to make good on its employee's voluntary pledge, or whether or how the lack of such arrangements resulted in any harm that she would not otherwise have suffered.

The Plaintiff brought this suit against Yahoo! — but not the ex-boyfriend who allegedly perpetrated this harassment — in the Circuit Court for the State of Oregon for the County of Multnomah. While the Plaintiff denominates her claim as one for "negligence," the damages she

seeks are for alleged "injury to her personal professional reputation," "emotional distress," "mental anguish," and "loss of self-esteem and dignity," as well as some unspecified "physical injury." (Compl. ¶ 11.) Having earlier removed this case to this Court, Yahoo! now moves to dismiss the Complaint based on two independent grounds: (1) Yahoo! is immune from liability to Plaintiff under 47 U.S.C. § 230(c)(1), and (2) as a matter of state law, the Complaint fails to state a claim upon which relief may be granted.

## ARGUMENT

### I. THE PLAINTIFF'S CLAIM IS BARRED BY SECTION 230.

In 1996, Congress enacted Section 230 to generally immunize interactive service providers such as Yahoo! from liability for harm caused by the dissemination of third-party information. Congress's grant of broad statutory immunity to interactive service providers represented a critical legislative policy judgment — spelled out in Section 230's extensive preamble, as well as its legislative history — that imposing liability on online intermediaries for unlawful third-party content would threaten development of the online industry as a medium for new forms of mass communication and simultaneously create disincentives to *self*-regulation of such content by responsible service providers. Congress therefore determined that liability generally should rest only with the actual wrongdoers — the originators of illegal and harmful content — and not intermediary services, like Yahoo!, whose systems are sometimes abused by such wrongdoers. As demonstrated below, the plain language of Section 230, supported by a legion of precedents from courts across the country that have broadly construed the statute, including this Court and the Ninth Circuit, compels the conclusion that Yahoo! is immune from liability in this case.

**A.      Section 230 Broadly Immunizes Entities Like Yahoo! From Liability for Third-Party Content.**

The key operative provision of Section 230 states:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1).  The statute further provides:

> No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

*Id.* § 230(e)(3).

In the nine years since Section 230 was enacted, federal and state courts in jurisdictions across the country — including four federal courts of appeal, numerous federal district courts, one state supreme court, and many other state courts — have squarely held that Section 230 generally bars claims that seek to hold the provider of an interactive computer service liable for tortious or unlawful information that someone else disseminates using that service.  As the Ninth Circuit recently observed, its decision in *Batzel v. Smith*, 333 F.3d 1018, 1020 (9th Cir. 2003), "joined the consensus developing across other courts of appeal that § 230(c) provides broad immunity for publishing content provided primarily by third parties."  *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) ("Under the statutory scheme, an 'interactive computer service' qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue."); *Batzel*, 333 F.3d at 1020 ("Congress . . . has chosen for policy reasons to immunize from liability for defamatory or obscene speech 'providers and users of interactive computer services' when the . . . material is provided by someone else."); *Zeran v. America Online, Inc.*, 129 F.3d 327, 328 (4th Cir. 1997) (Wilkinson, C.J.) ("Section 230 . . . plainly immunizes computer service

providers like AOL from liability for information that originates with third parties."), *cert. denied*, 524 U.S. 937 (1998); *Green v. America Online, Inc.*, 318 F.3d 465, 471 (3d Cir. 2003) ("By its terms, § 230 provides immunity to AOL as a publisher or speaker of information originating from another information content provider."), *cert. denied*, 540 U.S. 877 (2003); *Ben Ezra, Weinstein, & Co. v. America Online, Inc.*, 206 F.3d 980, 984-85 (10th Cir. 2000) (Section 230 "creates a federal immunity to any state law cause of action that would hold computer service providers liable for information originating with a third-party"), *cert. denied*, 531 U.S. 824 (2000); *Doe v. America Online, Inc.*, 783 So. 2d 1010, 1013-17 (Fla.), *cert. denied*, 534 U.S. 891 (2001) (hereinafter referred to as "*Florida Doe*").[2]

Indeed, this Court itself recently added to that body of law, confirming that Section 230 immunizes website operators from claims based on information that users posted directly to the operators' sites. *See Roskowski v. Corvallis Police Officers' Ass'n*, No. Civ. 03-474-AS, 2005 WL 555398 (D. Or. Mar. 9, 2005) (Ashmankas, M.J.) (Report and Recommendation adopted by

---

[2] *See also Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1117-18 (W.D. Wash. 2004); *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1107-1108 (C.D. Cal. 2004); *Novak v. Overture Servs. Inc.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004); *MCW, Inc. v. Badbusinessbureau.com, LLC*, No. Civ. A: 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004); *Noah v. AOL Time Warner Inc.*, 261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd*, No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004) (unpublished *per curiam* disposition); *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998); *PatentWizard, Inc. v. Kinko's Inc.*, 163 F. Supp. 2d 1069, 1071 (D.S.D. 2001); *Marczeski v. Law*, 122 F. Supp. 2d 315, 327 (D. Conn. 2000); *Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, No. 2:04CV47FTM33SPC, 2005 WL 1677256 (M.D. Fla. July 14, 2005); *Smith v. Intercosmos Media Group, Inc.*, No. Civ. A. 02-1964, 2002 WL 31844907, at *5 (E.D. La. Dec. 17, 2002); *Gentry v. eBay Inc.*, 121 Cal. Rptr. 2d 703, 714 (Ct. App. 2002); *Kathleen R. v. City of Livermore*, 104 Cal. Rptr. 2d 772, 776-81 (Ct. App. 2001); *Donato v. Moldow*, 865 A.2d 711 (N.J. Super. Ct. App. Div. 2005); *Barrett v. Fonorow*, 799 N.E.2d 916, 924-25 (Ill. App. Ct. 2003); *Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 43 (Wash. Ct. App. 2001); *Stoner v. eBay Inc.*, No. 305666, 2000 WL 1705637, at *1 (Cal. Super. Ct. Nov. 1, 2000); *Jane Doe One v. Oliver*, 755 A.2d 1000, 1003-04 (Conn. Super. Ct. 2000), *aff'd*, 792 A.2d 911 (Conn. App. Ct. 2002).

No. Civ. 03-474-AS, 2005 WL 1429917 (D. Or. June 15, 2005) (Brown, J.)). As it noted, Section 230 "provides a federal immunity to any cause of action that would make computer service providers liable for information originating with a third-party user of the service." *Id.* at *10 (quoting *Zeran*, 129 F.3d at 330).

As the long and uniform line of precedents confirm, Section 230 clearly bars Plaintiff's claim. Indeed, the facts of this case closely resemble those in the Ninth Circuit's decision in *Carafano v. Metrosplash.com, Inc.* In that case, the plaintiff, a television and film actress named Christianne Carafano, was the victim of a hoax involving an unauthorized personal profile posted by an unidentified Internet user on the defendant's online dating service. 339 F.3d at 1121. As here, that profile falsely purported to have been authored and posted by Carafano, included photographs of her, and contained a variety of statements of a sexual nature, such as a declaration that she was "looking for a one-night stand." *Id.* That bogus profile, like the ones allegedly at issue here, also provided information about how to personally contact Carafano, including her home address, e-mail address, and home telephone number. *Id.* Also as in this case, Carafano alleged that, as a result of the profile, she suffered harassment and indignity and received sexually explicit inquiries from strangers. *Id.* at 1121-22. Carafano sued Matchmaker under various tort theories, including negligence, as well as invasion of privacy, defamation, and misappropriation of the right of publicity. *Id.* at 1122. The Ninth Circuit, however, held that Section 230 barred her claims against the provider of the online dating web site: Because a "third party willingly provide[d] the essential published content," Section 230 gave Matchmaker "full immunity" from the plaintiff's claims. *Id.* at 1124.

The Fourth Circuit's landmark decision in the *Zeran* case, whose facts and allegations are virtually identical to those of the present case, demonstrates that the applicability of the

immunity provided under Section 230(c)(1) is not altered by an allegation, such as that made by the Plaintiff here, that the defendant service provider failed to make good on an alleged voluntary undertaking to put a stop to recurrent online postings from someone who was impersonating the plaintiff. In that case, a malicious hoaxster posted false online advertisements, purportedly on behalf of and signed by the plaintiff, Kenneth Zeran, indicating that Zeran was selling T-shirts and similar items bearing crude and tasteless jokes about the then-recent Oklahoma City bombing. 129 F.3d at 329. As the Plaintiff does here, Zeran claimed that he began receiving harassing phone calls and other abuse as a result of the bogus postings. When he contacted AOL to demand that the bulletin board messages be taken down, he allegedly was "assured" by a "company representative . . . that the posting would be removed." *Id.* Zeran alleged that the postings and the harassment nevertheless continued and brought suit, claiming that AOL was negligent for not having acted quickly enough to remove the postings and not preventing similar postings from being made again. *Id.* The Fourth Circuit rejected Zeran's claim, concluding that, because he was seeking to hold the service provider liable based on injuries allegedly resulting from the dissemination of third-party content, his claim necessarily and impermissibly sought to treat the service provider as a "publisher" of that content, regardless of the particular label attached to the claim. *See id.* at 327.

Since Section 230's enactment, Congress has looked on with approval as many courts, including the Fourth Circuit in *Zeran,* have interpreted Section 230 as broadly protecting online services from liability for illegal third-party content and instead focusing liability exclusively on the wrongdoers who are the sources of such content. In 2002, Congress passed the "Dot Kids Implementation and Efficiency Act," establishing a new "kids.us" sub-domain — dedicated to content deemed safe for minors — within the federally controlled ".us" Internet domain. *See* 47

U.S.C. § 941.  In doing so, Congress specifically extended the protections of Section 230 to cover certain entities that would operate in the new sub-domain, knowing full well how Section 230 had been applied in the courts.  *Id.* § 941(e)(1).  The definitive committee report accompanying that 2002 statute could not have been more clear and direct in embracing the uniform and growing body of precedents decided in the five years since Section 230 had been enacted.  Citing *Zeran*, *Florida Doe*, and *Ben Ezra*, the committee report declared that "[t]he courts have correctly interpreted section 230(c)," and that "[t]he Committee intends these interpretations of Section 230(c) to be equally applicable to those entities covered by [the new statute]."  H.R. Rep. No. 107-449, at 13 (2002).

For the same reasons set forth in *Carafano*, *Zeran*, *Roskowski* and the numerous other cases applying Section 230, the Complaint in this case, which would impose liability on Yahoo! for harms allegedly caused by information created and posted by a third party, is barred by Section 230.

**B.     Each of the Statutory Elements of Immunity Is Apparent on the Face of the Complaint.**

Under the plain language of the statute, Section 230 immunity applies whenever (1) the defendant claiming immunity is "a provider . . . of an interactive computer service," (2) the plaintiff's claim seeks to "treat[]" the defendant as the "publisher or speaker" of the allegedly harmful information at issue, and (3) that information was "provided by another information content provider."  47 U.S.C. § 230(c)(1); *see generally Carafano*, 339 F.3d at 1123; *Batzel*, 333 F.3d at 1030-31; *Ben Ezra, Weinstein, & Co.*, 206 F.3d at 984-85; *Zeran*, 129 F.3d at 330; *Roskowski*, 2005 WL 555398, at *11.  Each of these elements is readily apparent on the face of the Complaint.

### 1. Yahoo! Is a "Provider" of an "Interactive Computer Service."

The Plaintiff's own allegations make clear that Yahoo! is a "provider" of an "interactive computer service" and is therefore entitled to the protections of Section 230. Under Section 230, an "interactive computer service" includes "*any* information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2) (emphasis added). The Complaint is premised entirely on harms arising from material that was made available through Yahoo!'s profile and chat services, which are available to "165 million registered Yahoo! users and 345 million unique visitors" each month through the Yahoo! website. (Compl. ¶¶ 3-4, 10.) These services thus clearly "enable[] computer access by multiple users to a computer server" — namely, the servers on which Yahoo!'s online services are based — and it is therefore indisputable that Yahoo! is the provider of an "interactive computer service" within the meaning of Section 230.[3]

### 2. The Bogus Profiles and Chat Room Dialogue Allegedly Created by Plaintiffs' Ex-Boyfriend Were "Information Provided By Another Information Content Provider."

The Complaint on its face is based on information that was provided by "another information content provider." Section 230 defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the *creation or development* of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis added). There is no allegation, nor could there be, that Yahoo! originated

---

[3] As this Court has noted, web-based services such as those provided by Yahoo! routinely have been held to be interactive computer services for purposes of Section 230. *Roskowski*, 2005 WL 555398, at *11 ("Website providers have been found to fall within the definition of a provider of an interactive computer service under the act."); *see also Carafano*, 339 F.3d at 1122-25 (online web-based dating service); *Gentry*, 121 Cal. Rptr. 2d at 715 n.7 (eBay web-based auction service); *Schneider*, 31 P.3d at 40-41(Amazon.com web-based sales service).

the profiles or chat room discussions at issue or had any other role in their "creation or development." Rather, the Complaint alleges that the "Plaintiff's ex-boyfriend . . . post[ed] [the] unauthorized profiles," populated them with pornographic photographs of Plaintiff that he somehow created "without her knowledge or authorization," and then engaged in the "online discussions" in chat rooms in which he allegedly lured strangers to the Plaintiff. (Compl. ¶ 3.) Accordingly, all of the allegedly harmful information at issue originated with the ex-boyfriend, and therefore plainly constitutes "information provided by *another* information content provider." *See, e.g.*, *Carafano*, 339 F.3d at 1125 (contents of allegedly bogus online profile constituted "information provided by another information content provider"); *Green*, 318 F.3d at 469 (same holding concerning information sent through chat rooms); *Zeran*, 129 F.3d at 330 (same holding concerning bogus and defamatory postings on online bulletin board); *Florida Doe*, 783 So. 2d at 1011-12 (same holding concerning chat room dialogue advertising child pornography); *Roskowski*, 2005 WL 555398, at *12 (same holding concerning "unverified anonymous" messages posted on defendants' website).

### 3. The Complaint Impermissibly Seeks to Treat Yahoo! as the "Publisher or Speaker" of the Third-Party Information.

As the case law confirms, any lawsuit that would impose liability on an interactive service provider for allegedly harmful or tortious third-party information necessarily "treats" the service provider as the "publisher or speaker" of that information in contravention of Section 230. *See, e.g.*, *Zeran*, 129 F.3d at 332-33; *Ben Ezra, Weinstein & Co.*, 206 F.3d at 986; *Blumenthal*, 992 F. Supp. at 52; *PatentWizard, Inc.*, 163 F. Supp. 2d at 1071; *Florida Doe*, 783 So. 2d at 1013-17. Thus, as this Court explained, Section 230 "provides a federal immunity to *any* cause of action that would make service providers liable for information originating with a third-party user of the service." *Roskowski*, 2005 WL 555398, at *10 (emphasis added, quoting

*Zeran*, 129 F.3d at 330). This case, which explicitly seeks to hold Yahoo! liable for harm caused by profiles and chat room comments originated by the Plaintiff's ex-boyfriend, is no different.

Like other claims against interactive computer services discussed in the case law, the allegations of the Plaintiff's complaint "treat" Yahoo! as the "publisher or speaker" of third party content in at least three ways. *First*, the Plaintiff's claims would explicitly impose on Yahoo! the "quintessential duties" of a publisher, including the duties to block, screen, warn against, or edit the allegedly harmful material, in violation of Section 230's prohibition on "publisher" liability. As the Fourth Circuit held in *Zeran*, *any* claim based on a service provider's alleged failure to "exercise . . . a publisher's traditional editorial functions," such as monitoring or screening other parties' transmissions or deciding whether to withdraw or delete content, necessarily and impermissibly treats the provider as a publisher of that information. *See* 129 F.3d at 330; *see also Ben Ezra, Weinstein & Co.,* 206 F.3d at 986 ("Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its . . . self-regulatory functions.").

In this case, the Plaintiff explicitly seeks to hold Yahoo! liable for failing to engage in these self-regulatory activities to the Plaintiff's satisfaction. In particular, the Complaint alleges that Yahoo! should be liable because it allegedly "failed to remove the unauthorized profiles and prohibit them from being posted again." (Compl. ¶ 9.) Such a claim rests on Yahoo!'s alleged failures to fulfill the quintessential duties of a publisher to ensure that the content that is published is not tortious or otherwise unlawful. But Section 230 forbids the imposition of these duties on an interactive computer service provider such as Yahoo! where, as here, the content in question originates with a third party.

A *second* way that the Complaint demonstrably treats Yahoo! as the "publisher or speaker" of third-party content is that it would "cast [Yahoo!] in the same position as the party who originally" posted the offensive material. *Zeran,* 129 F.3d at 333. In particular, the Plaintiff seeks to hold Yahoo! liable on the same basic theory of harm and causation that she could plead against her ex-boyfriend (but curiously has not done so). She alleges in essence that (i) unauthorized pictures of her, and statements about her, were improperly made available to others online, and that (ii) she suffered damages as a result. This is precisely the type of claim that could be brought against the originator of the content in question, and the Plaintiff's claim therefore "treats" Yahoo! the same, as a legal matter, as the original publisher of the information.

The court in *Zeran* relied on precisely this reasoning in holding that Section 230 barred claims that aimed to make a service provider liable for online communications of someone who used its service:

> According to Zeran's logic, AOL is legally at fault because it communicated to third parties an allegedly defamatory statement. This is precisely the theory under which the original poster of the offensive messages would be found liable. If the original party is considered a publisher of the offensive messages, Zeran certainly cannot attach liability to AOL under the same theory without conceding that AOL too must be treated as a publisher of the statements.

*Id.*

*Third*, the present suit seeks to treat Yahoo! as the publisher of third-party content because the essence of the Complaint is that, as a result of Yahoo!'s alleged actions, the allegedly false and tortious profiles were "available to be viewed" (Compl. ¶ 10) — another way of saying that Yahoo! published the profiles. Within the meaning of Section 230, and as a matter of common law doctrine, the word "publisher" is the definitive term of art that identifies anyone — including an intermediary — who is subject to liability arising out of the dissemination of

harmful information. Not surprisingly, therefore, "publication" is an essential element of every form of tort claim that involves the dissemination of harmful content. *See, e.g.*, Restatement (Second) of Torts § 558 (1977) (defamation requires "an unprivileged *publication* to a third party" and "fault amounting at least to negligence on the part of the *publisher*" (emphasis added)); *id.* §§ 652D & 652E (invasion of privacy actions based on revelation of private facts or placing person in false light require showing that defendants gave "publicity" to allegedly tortious information); *id.* § 623A (tort of injurious falsehood applies only to "one who *publishes* a false statement harmful to the interests of another" (emphasis added)).

In light of the broad meaning of the word "publisher," the operative inquiry in any Section 230 analysis is whether the plaintiff has asserted a "cause of action that would make [a] service provider[] liable for information originating with a third-party user of the service." *Zeran*, 129 F.3d at 330. If so, then the complaint impermissibly treats the service provider as a "publisher" of third-party content in direct contravention of Section 230. Here, because the Plaintiff's claim would make Yahoo! liable for the alleged continued availability of her ex-boyfriend's bogus profiles, as well as for the statements he allegedly made in chat rooms while masquerading as her, it impermissibly treats Yahoo! as the publisher of those profiles and statements.

The Plaintiff cannot escape this conclusion by "artfully plead[ing] [her] claims as ones of negligence." *Zeran*, 129 F.3d at 332. Courts have consistently recognized that Section 230 applies regardless of the particular label placed on the claim and in particular have repeatedly

held that Section 230 bars negligence claims based on third-party content.[4/] As the Fourth Circuit explained in rejecting the plaintiff's negligence claim in *Zeran*, "[p]ublication does not only describe the choice by an author to include certain information. In addition, both the negligent communication of a defamatory statement and the failure to remove such a statement when first communicated by another party—each alleged by [the plaintiff] here under a negligence label—constitute publication." *Id.*

Indeed, allowing a claim to proceed simply because it was stated in terms of negligence would open a vast loophole in Section 230 immunity, because a plaintiff could evade the statute just by recasting or relabeling claims that clearly are based on publication. Here, for example, Plaintiff is seeking to recover for "injury to her personal and professional reputation," as well as "emotional distress," "mental anguish," and "loss of self-esteem and dignity" as a result of the dissemination of allegedly harmful information about her. (Compl. ¶ 11.) These are the classic allegations that typically form the basis of tort claims such as defamation and invasion of privacy,[5/] which, as noted above, have publication as an essential element and therefore clearly treat the defendant as a "publisher." The Plaintiff cannot escape the same result here by restating her claim as one for negligence.

---

[4/]     *See, e.g., Carafano*, 339 F.3d at 1122; *Green*, 318 F.3d at 468; *Ben Ezra, Weinstein & Co.*, 206 F.3d at 983; *Zeran*, 129 F.3d at 332; *PatentWizard, Inc.*, 163 F. Supp. 2d at 1070-71; *Smith,* 2002 WL 31844907, at *1; *Florida Doe*, 783 So. 2d at 1012; *Gentry*, 121 Cal. Rptr. 2d at 706; *Schneider*, 31 P.3d at 39 (negligent misrepresentation); *Jane Doe One*, 755 A.2d at 1002.

[5/]     *See* Restatement (Second) of Torts § 621 & cmt. n (damages for defamation claims may include provable reputational injury as well as actual injury from personal humiliation, mental anguish and suffering, and emotional distress); Restatement (Second) of Torts § 652H & cmt. a-b (damages for false-light and publication-of-private-details invasion of privacy claims may include provable reputational injury as well as "damages for emotional distress or personal humiliation"); *Flowers v. Carville*, 310 F.3d 1118, 1132 (2002) (discussing different types of damages recoverable in defamation and false light invasion of privacy actions).

**C.    Congress Intended Section 230 to Protect Service Providers from Precisely This Type of Lawsuit.**

Permitting the Plaintiff to proceed with her Complaint against Yahoo! would directly contravene Section 230's core policy goals. Although Congress recognized that technologies that enable millions of citizens to engage in online speech inevitably will be abused sometimes by purveyors of unlawful and harmful information, it determined that the appropriate policy balance is to permit recourse against the actual wrongdoer — that is, the originator of the harmful information — while shielding service providers from liability. Congress struck this balance in order to avoid discouraging service providers both from developing and offering innovative platforms for vibrant and diverse free speech and from engaging in forms of voluntary self-regulation that would otherwise increase their risk of liability. *See Zeran*, 129 F.3d at 330-31. Allowing the Plaintiff to proceed with her lawsuit against Yahoo! would run afoul of both of these policy objectives.

**1.    Imposing Liability on Yahoo! Would Undermine Congress's Objective of Encouraging the Development and Availability of Innovative Online Services and Forums that Foster Free Speech by Millions of Citizens.**

As the Ninth Circuit has explained, Congress enacted Section 230 "to encourage the *unfettered and unregulated* development of free speech on the Internet." *Batzel*, 333 F.3d at 1027-28 (emphasis added) ("there is little doubt that [Section 230] sought to further First Amendment and e-commerce interests on the Internet"). As the preamble to Section 230 explains, "interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity," 47 U.S.C. § 230(a)(3), and online services have "flourished, to the benefit of all Americans, *with a minimum of government regulation*." *Id.* § 230(a)(4) (emphasis added). It is therefore "the policy of the United States . . . to preserve the vibrant and competitive free market that presently

exists for the Internet and other interactive computer services, *unfettered by Federal or State regulation.*" *Id.* § 230(b)(2) (emphasis added).

Section 230 encourages "freedom of speech in the new and burgeoning Internet medium" by eliminating the "threat [of] tort-based lawsuits" that would impose burdens on interactive computer services with respect to the communications of their millions of users. *Zeran*, 129 F.3d at 330. As the federal court of appeals stated in *Zeran*:

> The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech. Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum.

*Id.*

Congress recognized that "[m]aking interactive computer services and their users liable for the speech of third parties would severely restrict the information available on the Internet." *Batzel*, 333 F.3d at 1027-28. Thus,

> Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.
>
> Congress' purpose in providing the § 230 immunity was thus evident. Interactive computer services have millions of users. The amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect.

*Zeran*, 129 F.3d at 330-31 (citation omitted); *see also* 141 Cong. Rec. 22,046 (1995).

In *Zeran*, the Fourth Circuit considered the impact that liability for tortious or otherwise unlawful third-party content would have on the operation of online forums — in that case, electronic bulletin boards — that may host content posted by hundreds of thousands of individual users. *See* 129 F.3d at 331. Because of the proliferation of speech on those bulletin boards, the

court recognized that "[i]t would be impossible for service providers to screen each of their millions of postings for possible problems," and that a regime that imposed tort liability on an interactive service provider might cause providers "to severely restrict the number and type of messages posted." *See id.* Indeed, given the "staggering" volume of third-party content that they carry, and "[f]aced with potential liability for each message republished by their services," *see id.* at 331, providers of such services likely would be forced, absent Section 230's protection, to restrict or shut down many of the forums that enable the dissemination of third-party content in the first place.

Like the services in *Zeran, Carafano, Roskowski*, and the numerous other cases applying Section 230, Yahoo!'s services, including in particular its profile service and its online chat service, are precisely the types of services that Section 230 was intended to protect and to promote, by removing the risk of liability for the "staggering" volume of communications that they enable.[6] Because Yahoo! does not create individual user profiles, but instead gives users the freedom to do so on their own, its profile service is a remarkably useful tool for individuals who wish to disseminate personal details about themselves so that, for example, people with common interests or characteristics, can search for, find, and communicate with one another. Likewise, Yahoo!'s chat service supports a vast array of communications among individuals about particular topics or issues — empowering people to forge connections that before could not be made. As Congress recognized, imposing liability on service providers such as Yahoo! for the small but inevitable volume of inappropriate or unlawful speech that bad actors such as the Plaintiff's ex-boyfriend might disseminate through such services could well impinge on the

---

[6] Indeed, according to Plaintiff's statistics, Yahoo! has "over 165 million registered users," each of whom has the ability to create and transmit content of many sorts via Yahoo!'s many services. (Compl. ¶ 10.)

huge volumes of legitimate online speech carried on those services by forcing providers to impose broad restrictions on what users may post or even to shut down some forums or services altogether. As the Ninth Circuit has recognized, Section 230 was intended to prevent precisely that result. *See Batzel*, 333 F.3d at 1028 ("Section 230 therefore sought to prevent lawsuits from shutting down websites and other services on the Internet.").

> ### 2. Imposing Liability on Yahoo! Would Undermine Congress's Goal of Encouraging Service Providers To Engage in Self-Regulation.

Allowing suits such as this to proceed would also run afoul of Section 230's second core policy objective, which is "to encourage service providers to *self-regulate* the dissemination of offensive material over their services." *Zeran*, 129 F.3d at 331 (emphasis added); *see Batzel*, 333 F.3d at 1028 (Section 230 was intended to "encourage interactive computer services and users of such services to *self-police* the Internet for obscenity and other offensive material") (emphasis added); 141 Cong. Rec. 22,046 (Section 230 was designed to give interactive service providers "a reasonable way to . . . help them *self-regulate* themselves *without penalty of law*") (emphasis added). Indeed, Congress was so concerned to avoid any disincentive to self-regulation that, in addition to the Section 230(c)(1) immunity on which the present motion is based, it also enacted, in Section 230(c)(2), a separate and specific immunity barring the

imposition of liability on service providers based on so-called "Good Samaritan" actions to block or take down harmful or objectionable content.[7/]

Congress recognized that a regime that imposed civil liability on service providers such as Yahoo! for harms resulting from third-party content carried on their services would perversely *discourage* responsible self-regulation and enacted Section 230 to prevent that result. *See, e.g.*, H.R. Conf. Rep. No. 104-458, at 194 (1996) (one purpose of Section 230 was to overrule *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995), which had held that a service provider's efforts to regulate third-party content *created* duties and liabilities that would not have arisen absent such measures). In particular, because service-provider liability in the absence of statutory immunity could be imposed only if the service provider had actual or constructive knowledge of the tortious content at issue,[8/] a legal regime that allowed such liability to be imposed would "reinforce[] service providers'

---

[7/]       Section 230(c)(2) states, in relevant part, that "[n]o provider or user of an interactive computer service shall be held liable on account of (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable. . . ." If for any reason this Court were to decline to dismiss the Complaint based on the immunity provided under Section 230(c)(1), Yahoo! would be entitled to raise, by way of a threshold motion for summary judgment, an additional claim of statutory immunity under Section 230(c)(2). Yahoo! is not doing so in this motion to dismiss both because it should be unnecessary and because it would involve the submission of affidavits attesting to facts outside the four corners of the Complaint — including the good faith of the employee who voluntarily reached out to Plaintiff via telephone and the fact that, shortly after (and as a result of) that employee's call, Yahoo!'s customer service personnel deactivated several Yahoo! accounts that had been used to create pornographic profiles that purported to be about a Cecilia Barnes in Portland, Oregon, and removed those profiles from the Yahoo! service.

[8/]       As a matter of First Amendment doctrine, an entity that serves as an intermediary for large quantities of third-party content — whether it be a bookstore, a library, a newsstand, or the provider of an online forum open to the public — cannot be held liable for unlawful content that may be interspersed among the overall body of information being disseminated absent evidence that it at least knew or should have known of that content. *See, e.g.*, *Smith v. California*, 361 U.S. 147, 152-53 (1959).

incentives to . . . abstain from self-regulation." *Zeran*, 129 F.3d at 333; *Blumenthal*, 992 F. Supp. at 52 ("Congress has conferred immunity from tort liability as an incentive to Internet service providers to self-police the Internet for obscenity and other offensive material, even where the self-policing is unsuccessful or not even attempted."). Congress understood that, absent immunity from such liability, service providers would be likely to abandon or limit self-policing out of fear that such activities would in fact give them the type of "notice" that could give rise to liability. Congress thus created Section 230 immunity to give service providers such as Yahoo! freedom to implement self-regulatory measures without fear that by doing so they would be setting themselves up for potential liability based on what they actually or constructively learned in the course of policing their services.

This policy justification is especially applicable where, as here, a plaintiff explicitly seeks to impose liability on a service provider *because* of its self-regulatory efforts. The Complaint in this case is expressly premised on Yahoo!'s alleged failure to follow through on a supposed legal duty that the Plaintiff claims arose from a promise that a Yahoo! employee allegedly extended during a call that she voluntarily made to the Plaintiff. (Compl. ¶ 7.) According to the Plaintiff, Yahoo! should be liable because it not only knew about the content at issue, but pledged to take steps to stop its distribution. This is precisely what Section 230 is intended to prevent, because the Plaintiff would deliberately penalize Yahoo! for *making someone available* to try to resolve her concerns, and would use that fact as an opportunity to expose Yahoo! to litigation burdens and potential liability that a *less cooperative* company would not, under the Plaintiff's reasoning, have to face. The Plaintiff concedes that a service provider who refused to help would have "no initial responsibility to act" (Compl. ¶ 9), and thus no liability at all. But according to the

Plaintiff, because Yahoo! began to take steps to try to address her concerns, it should be held responsible for an alleged failure to follow through to her satisfaction.

As noted above, Section 230 was specifically intended to ensure that a service provider such as Yahoo! could not be subjected to litigation simply *because* it devoted resources to attempting to learn about and address concerns regarding harmful or objectionable content appearing on it service. Allowing the Plaintiff's claims to proceed, however, would create strong disincentives to responsible self-regulation and would teach service providers the perverse lesson that they should do everything they can to close their eyes and ears to complaints about objectionable user-supplied content. Indeed, it would create an incentive to never even begin going down the path of attempting to help someone who claims to be having a problem with such content, because the very act of doing so would create a legal duty and risk of liability where otherwise there would be no such duty or risk at all. In this regard, as well, the Plaintiff's effort to impose liability on Yahoo! in this case would turn Section 230 on its head.

## II. EVEN IF THE PLAINTIFF'S CLAIM WERE NOT BARRED BY SECTION 230, IT WOULD STILL FAIL AS A MATTER OF STATE LAW.

Even if Section 230 did not preclude the Plaintiff's claim, the Complaint would still have to be dismissed for failure to state a claim as a matter of state law. Apparently conceding that Yahoo! would have no liability but for a Yahoo! employee's alleged promise to remove and block the allegedly harmful profiles, the Plaintiff's entire Complaint rests on the proposition that Yahoo! was negligent in its performance of a voluntary "Good Samaritan" undertaking. (Compl. ¶¶ 7-9.) To prevail on this theory as a matter of either California or Oregon law, the only two

states whose law might apply,[9/] the Plaintiff would need to plead and prove either that Yahoo!'s alleged undertaking to remove the offensive profiles increased her risk of being harmed or that she reasonably relied to her detriment on Yahoo!'s alleged undertaking. She has failed to plead such facts and cannot do so, because by her own description her circumstances before and after Yahoo!'s alleged undertaking were *exactly the same*. For this reason, her claim is fatally defective under applicable state law.

At common law, a person ordinarily is not obligated to assist a person in need of aid. *Artiglio v. Corning Inc.*, 76 Cal. Rptr. 2d 479, 483 (Ct. App. 1998). Once a person undertakes to help another in need, however, that person may in certain circumstances be obligated to use "reasonable care" in performing that undertaking. *Id.* at 483; *Quackenbush v. Portland Gen. Elec. Co.*, 894 P.2d 535, 539 (Or. Ct. App. 1995). In general, to prevail on this theory, a plaintiff must "allege in some way that the defendant's action placed him in a worse position than he would have been without the aid given." *McDonald v. Title Ins. Co. of Or.*, 621 P.2d 654, 658 (Or. Ct. App. 1983). As the Restatement (Second) of Torts declares, liability for harm under this theory is appropriate *only* where the defendant's actions either (1) "increase[d] the risk" of harm to the plaintiff or (2) "the harm [was] suffered because of the [plaintiff's] reliance upon the undertaking." Restatement (Second) of Torts § 323 (1965); *see Arney v. Baird*, 661 P.2d 1364, 1366 n.2 (Or. Ct. App. 1983) (quoting Restatement provision); *Williams v. California*, 664 P.2d

---

[9/]    In general, a federal court sitting in diversity applies the choice of law principles of the state in which it is located. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Oregon follows the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws § 145 (1971). *See Fields v. Legacy Health Sys.*, _ F.3d _, Nos. 03-35386, 03-35587, 2005 WL 1459541 (9th Cir. June 22, 2005). Only California, the state in which Yahoo! is headquartered, and Oregon, the state in which the Plaintiff lives and works, have any relationship to this case, and therefore, the law of one of those two states must be applied. Because the Plaintiff's claim fails under either California or Oregon law, the Court need not resolve that choice here.

137, 139 (Cal. 1983) (Good Samaritan can be subject to liability only if "(a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking"). Thus, the undertaking itself cannot be the basis for liability unless the "assistance has put the [plaintiff] in a worse position than he was in before, either because the actual danger of harm to the other has been increased by the partial performance, or because the other, in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance." Restatement (Second) of Torts § 323 cmt. c.[10]

Even if all of the Plaintiff's allegations were true, it is readily apparent that she has not pled, and could not establish, facts that would satisfy either half of this test. Yahoo!'s actions clearly did not increase the risk of harm to the Plaintiff. In cases in which courts have found the risk of harm potentially was increased, the defendant placed the plaintiff in harm's way or otherwise created or enhanced the risk of injury. *See, e.g.*, *Dundas v. Lincoln County*, 618 P.2d 978, 985 (Or. Ct. App. 1980) (defendant who failed to maintain fire extinguisher in operable condition potentially could be deemed to have increased the risk of harm where use of the faulty extinguisher caused delay in calling fire department); *see also Williams*, 664 P.2d at 140 ("The breach of duty may be an affirmative act which places the person in peril or increases the risk of harm as in [a case] where an officer [voluntarily] investigating an accident directed the plaintiff to follow him into the middle of the intersection where the plaintiff was hit by another car.").

---

[10] In addition, at least absent a special fiduciary duty that clearly does not exist here, the only type of injury for which damages are recoverable under this negligence theory is "physical harm." Restatement (Second) of Torts § 323; *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1182-83 (D. Or. 1998); *Felton v. Schaeffer*, 279 Cal. Rptr. 713, 718 (Ct. App. 1991) (absence of physical harm "takes this case outside the ambit of section 323 of the Restatement Second of Torts"). Thus, most of the types of damages tha the Plaintiff seeks — "injury to her personal professional reputation," "emotional distress," "mental anguish," and "loss of self-esteem and dignity" (Compl. ¶ 11) — are not even cognizable under this theory.

Here, the Complaint does not purport to allege that Yahoo!'s alleged failure to follow through on its alleged undertaking *created* or *increased* the risk of harm. Indeed, at most, Yahoo!'s alleged failure preserved the status quo. According to the Complaint, allegedly harmful profiles had been in circulation for several months before Yahoo!'s alleged undertaking. (*See* Compl. ¶¶ 3-7.) The Plaintiff's complaint is that Yahoo! allegedly failed to take action to remove those profiles. If Yahoo! had refused to provide any assistance, rather than offering to help, those profiles would have remained and the alleged harassment the Plaintiff suffered would have continued. *See Von Batsch v. American Dist. Tel. Co.*, 222 Cal. Rptr. 239, 246-47 (Ct. App. 1985) (defendants not liable where they "did not create the peril" and "took no affirmative action which contributed to, increased, or changed the risk which would have otherwise existed" but "[a]t most . . . merely failed to eliminate the [preexisting] danger"); *City of Santee v. County of San Diego*, 259 Cal. Rptr. 757, 762 (Ct. App. 1989) ("[N]onfeasance which results in failure to eliminate a preexisting risk is not equivalent to nonfeasance which increases a risk of harm."). Thus, Yahoo!'s alleged acts did not place the Plaintiff in harm's way or otherwise increase the risk of harm.

The Plaintiff instead appears to rely on the second prong of the test for liability — namely, that she detrimentally relied on Yahoo!'s alleged voluntary undertaking. Yet the Complaint does no more than parrot the words of the relevant legal test, baldly stating that she "relied" on the undertaking by "ma[king] no other arrangements for assistance." (Compl. ¶ 8.) Even on a motion to dismiss, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged," *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), nor is the Court "required to accept as true allegations that are merely conclusory, unwarranted deductions of

fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Complaint does not identify any action that the Plaintiff either took or did not take in detrimental reliance on the alleged Yahoo! undertaking. In particular, it does not explain what "other arrangements" she could or would have made to remove the profiles or end the alleged harassment. Indeed, the Plaintiff alleges that she unsuccessfully tried for three months before Yahoo!'s alleged voluntary undertaking to get Yahoo! to remove the allegedly harmful profiles (Compl. ¶¶ 3-7), yet she does not claim to have taken any alternative action or made any other "arrangement" for assistance during that extended period. The Complaint offers no reason why she suddenly could or would have made some such unspecified "arrangements" after three months if Yahoo! had not allegedly undertaken to help her.[11/]

Thus, even under the facts as alleged by the Plaintiff, she was in no "worse position than [s]he was in before," Restatement (Second) of Torts § 323 cmt. c, as a result of Yahoo!'s alleged undertaking. For this reason, her claim fails as a matter of state law and must be dismissed.

---

[11/] Further, the Plaintiff's alleged reliance here would not have been *reasonable* because she could easily check whether Yahoo! was in fact meeting its alleged obligation — by looking at the Yahoo! service for the allegedly tortious profiles, to see if they had in fact been removed. *See, e.g., Zima v. North Colonie Cent. Sch. Dist.*, 639 N.Y.S.2d 558, 559 (App. Div. 1996) (no reliance on alleged undertaking to make sidewalks safe during "ongoing hazardous weather condition" given the defendant's "awareness of the icy rain" and his knowledge that there was "ice on the sidewalk").

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

/s/ Patrick J. Carome
_____

*Of Counsel*
Reginald Davis
Eulonda Skyles
Yahoo! Inc.
701 First Avenue
Sunnyvale, CA 94086

Patrick J. Carome
E-mail:patrick.carome@wilmerhale.com
Samir Jain
E-mail:samir.jain@wilmerhale.com
2445 M Street, NW
Washington, DC 20037
Telephone:     (202) 663-6000
Facsimile:     (202) 663-6363

COSGRAVE VERGEER KESTER LLP
Jeffrey A. Johnson, OSB No. 82292
805 SW Broadway, 8th Floor
Portland, OR 97205
Telephone: (503) 323-9000
Fax: (503) 323-9019
E-mail: jjohnson@cvk-law.com

*Counsel for Yahoo! Inc.*

July 27, 2005

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing Defendant's Motion to Dismiss the Complaint and Memorandum in Support on the date indicated below by electronic mail

I further certify that the electronic service included the following attorney:

Thomas R. Rask III
Kell, Alterman & Runstein, LLP
520 SW Yamhill, Suite 600
Portland, OR
Tel:  (503) 222-3531
Fax:  (503_ 227-2980

*Of Attorneys for Plaintiff*

DATED: July 27, 2005

_/s/ Jeffrey A. Johnson_____
Jeffrey A. Johnson
