Jeffrey A. Johnson, OSB No. 82292
Internet e-mail:jjohnson@cvk-law.com
COSGRAVE VERGEER KESTER LLP
805 SW Broadway, 8th Floor
Portland, Oregon 97205
Telephone:     (503) 323-9000
Facsimile:     (503) 323-9019

Patrick J. Carome
Internet e-mail:patrick.carome@wilmerhale.com
Samir Jain
Internet e-mail:samir.jain@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2445 M Street NW
Washington, D.C.  20037
Telephone:     (202) 663-6000
Facsimile:     (202) 663-6363

*Counsel for Defendant Yahoo! Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CECILIA L. BARNES,** | Civil Action No. **6:05-CV-926-AA** |
| **Plaintiff,** | |
| **v.** | **DEFENDANT YAHOO! INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** |
| **YAHOO! INC.,** | |
| **Defendant.** | **REQUEST FOR ORAL ARGUMENT** |

REPLY IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT

Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   PLAINTIFF FAILS TO OVERCOME SECTION 230'S CLEAR BAR TO HER CLAIM ...2

    A.   As Numerous Decisions Confirm, Plaintiff's Claim Impermissibly Seeks to Treat
          Yahoo! As the "Publisher" of Third-Party Content ...........................................................3

    B.   Plaintiff Is Not Helped by the Unpublished and Aberrational *Barrett* Decision .............6

        1. The Prevailing Interpretation of Section 230 Is Consistent with Congress's Intent
           and Policy Goals .........................................................................................................7

        2. Plaintiff's Embrace of the So-Called "Distributor Liability" Exception is
           Completely Misplaced ...............................................................................................10

II.  PLAINTIFF HAS FAILED TO STATE A CLAIM AS A MATTER OF STATE LAW ....14

CONCLUSION................................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Barrett v. Fonorow*,
799 N.E.2d 916 (Ill. App. 2003) ....................................................................................11

*Barrett v. Rosenthal*,
9 Cal. Rptr. 3d 142 (Cal. App. 2004)..................................................................1, 6, 7, 11

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ................................................................................ passim

*Ben Ezra, Weinstein & Co. v. America Online, Inc.*,
No. 97-485 LH/LFG, 1999 WL 727402 (D.N.M. March 1, 1999), *aff'd*,
206 F.3d 980 (10th Cir. 2000) .......................................................................................11

*Blumenthal v. Drudge*,
992 F. Supp. 44 (D.D.C. 1998) ......................................................................................11

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) .............................................................................2, 3, 7, 12

*Doe v. America Online, Inc.*,
783 So.2d 1010 (Fla. 2001)............................................................................................11

*Gentry v. eBay, Inc.*,
121 Cal. Rptr. 2d 703 (Ct. App. 2002) ...........................................................................11

*Kathleen R. v. City of Livermore*,
104 Cal. Rptr. 2d 772 (Ct. App. 2001) ...........................................................................11

*McDonald v. Title Insurance Co. of Or.*,
621 P.2d 654 (Or. Ct. App. 1980)...................................................................................15

*PatentWizard, Inc. v. Kinko's, Inc.*,
163 F. Supp. 2d 1069 (D.S.D. 2001) ..............................................................................11

*Perfect 10, Inc. v. CCBill, LLC*,
340 F. Supp. 2d 1077 (C.D. Cal. 2004) .......................................................................7, 11

*Quintano v. Mercury Casualty Co.*,
906 P.2d 1057 (Cal. 1995).................................................................................................7

*Schneider v. Amazon.com, Inc.*,
31 P.3d 37 (Wash. Ct. App. 2001)..................................................................................4, 5

*Smith v. California,*
361 U.S. 147 (1959)............................................................................................................13

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) ............................................................................................16

*Zeran v. America Online, Inc.,*
129 F.3d 327 (4th Cir. 1997) ...............................................................................3, 4, 11, 12, 13

## STATUTES AND OTHER MATERIAL

47 U.S.C. § 230..................................................................................................................1

Cal. Rules of Court 29.3(b)(3) ...........................................................................................7

Cal. Rules of Court 976(d)(1) ............................................................................................7

Cal. Rules of Court 977(a).................................................................................................7

Restatement (Second) of Torts § 323 (1965)........................................................14, 15

As Yahoo! established in its opening brief, Plaintiff's claim against Yahoo! falls squarely within the immunity granted by 47 U.S.C. § 230, which bars any claim against an interactive computer service provider that arises from allegedly harmful third-party content such as the online profiles and chat room conversations at issue here. In apparent recognition of this bar — which has been confirmed by courts throughout the country including the Ninth Circuit and this Court — Plaintiff's opposition to Yahoo!'s motion to dismiss struggles to portray her claim as having nothing to do with her ex-boyfriend's creation of those profiles and conversations, and as being based instead entirely on Yahoo!'s alleged failure to follow through on a purported "promise" to remove the profiles from its service. But this attempt to evade Section 230 fails. Like all other claims that fall within Section 230's ambit, Plaintiff's claim boils down to the allegation that she was harmed because Yahoo! breached a purported duty to screen, block, or remove harmful third-party content. Such a claim necessarily and impermissibly treats Yahoo! as a publisher of that content and is therefore foreclosed by Section 230.

Plaintiff's other attempts to circumvent Section 230 fare no better. Relying almost entirely on *Barrett v. Rosenthal*, 9 Cal. Rptr. 3d 142 (Cal. App. 2004), a decision from the California Court of Appeal that is contrary to all other precedents, she asserts that all the other courts to interpret Section 230 have misunderstood Congress's intent and that a purported exception to Section 230 immunity endorsed by *Barrett* supports her attempt to create another exception. But *Barrett* has been depublished and may no longer even be cited under California court rules. More importantly, *Barrett*'s interpretation of Section 230 is admittedly contrary to the *binding precedent of the Ninth Circuit* and irreconcilable with both the plain language and the purposes of Section 230.

Finally, Plaintiff's opposition offers no coherent response to Yahoo!'s showing that, even absent Section 230, her claim independently fails as a matter of state law because she has failed to plead the basic element of detrimental reliance that is a prerequisite to her theory of liability. For all of these reasons, as discussed below, Plaintiff's Complaint should be dismissed with prejudice.

## I.   PLAINTIFF FAILS TO OVERCOME SECTION 230'S CLEAR BAR TO HER CLAIM.

In its opening brief, Yahoo! explained that the Ninth Circuit has "joined the consensus" of other courts and confirmed that Section 230 provides service providers such as Yahoo! with "broad immunity for publishing content provided primarily by third parties." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). Yahoo! also demonstrated that each of the three requirements of this immunity are satisfied here: Yahoo! is "the provider" of an "interactive computer service," (Yahoo! Mem. at 11); the information at issue in this case — profiles and chat room conversations originated by Plaintiff's ex-boyfriend — is "information provided by another information content provider" (*id.* at 11-12); and Plaintiff's claim impermissibly "treat[s]" Yahoo! as the publisher of that content (*id.* at 12-16).

There is no dispute as to the first two elements. Instead, Plaintiff's opposition focuses largely on whether her claim "treat[s]" Yahoo! as a publisher of the harmful profiles at issue. In addition, the Plaintiff relies heavily on the depublished and anomalous *Barrett* decision to suggest that the broad interpretation given to Section 230 by all other courts, including the Ninth Circuit, is wrong and should simply be disregarded. Plaintiff's arguments fail on both counts.

**A.** **As Numerous Decisions Confirm, Plaintiff's Claim Impermissibly Seeks to Treat Yahoo! as the "Publisher" of Third-Party Content.**

As Yahoo! explained (Yahoo! Mem. at 6-10), this case is factually and legally indistinguishable from prior decisions holding that Section 230 "plainly immunizes computer service providers . . . from liability for information that originates with third parties." *Zeran v. America Online, Inc.*, 129 F.3d 327, 328 (4th Cir. 1997); *see Carafano*, 339 F.3d at 1123 ("§ 230(c) provides *broad immunity* for publishing content provided primarily by third parties.") (emphasis added); *see also Batzel v. Smith*, 333 F.3d 1018, 1026-28 (9th Cir. 2003). As the Ninth Circuit declared, "[u]nder § 230(c), therefore, so long as a third party willingly provides the essential published content, the interactive service provider receives *full immunity* regardless of the specific editing or selection process." *Carafano*, 339 F.3d at 1124 (emphasis added).

The core facts of this case are identical to those at issue in *Carafano*, *Zeran*, and virtually every case in which courts have applied Section 230's bar on treating a service provider as the "publisher or speaker" of third-party content. In each of these cases, Section 230 applied because two factors were present: The Plaintiff was allegedly harmed by third-party content, and the service provider allegedly breached a common law or statutory duty to block, screen, remove, or otherwise edit that content. As Yahoo! demonstrated in its opening brief, *any* such claim necessarily treats the service provider as a "publisher" of the content and is therefore barred by Section 230. (*See* Yahoo! Mem. at 12-16.) In particular, Plaintiff's claim here seeks to treat Yahoo! as the publisher of the profiles created by a third party (Plaintiff's ex-boyfriend) for at least three reasons: (i) The claim would impose on Yahoo! the "quintessential duties" of a publisher, (ii) it would impermissibly place Yahoo! in the same legal position as the originator of the material, and (iii) the essence of the complaint is that Plaintiff was harmed because the

profiles were "available to be viewed" on the Yahoo! service — that is, that they were published by Yahoo!. (*Id.*)

Plaintiff seeks to sidestep this governing authority by suggesting that her claim seeks only to hold Yahoo! liable for its alleged "failure to fulfill its [alleged] promise to remove the unauthorized profiles." (Pl. Opp. at 8-11.) But the courts have consistently rejected efforts to "artfully plead" around Section 230 where it is apparent, as here, that the claim is nothing more than an effort to hold the service provider liable for failing to perform the duties of a publisher, such as screening or removing third-party content. *Zeran*, 129 F.3d at 332. Just as in *Zeran*, the Plaintiff's effort to construct a non-barred "negligence" claim here runs afoul of Section 230. Indeed, as Yahoo! established (Yahoo! Mem. at 8-9), the facts of *Zeran*, the seminal Section 230 case, are on all fours with those at issue here: In that case, after complaining to AOL about the content at issue, Mr. Zeran asserted that he was allegedly "assured" by a "company representative . . . that the [allegedly tortious] posting would be removed." 129 F.3d at 329. As Plaintiff notes in her opposition, as a result of AOL's allegedly "lackadaisical response to pulling the outrageous" content at issue in that case, Mr. Zeran was thereafter allegedly "subjected to additional harassing phone calls." (Pl. Opp. at 11.) Although Plaintiff asserts that her claim is different from *Zeran* (*id.*), she never confronts, much less distinguishes, the fact that Mr. Zeran made precisely the same allegation as she makes here: that the service provider assured him that it would remove the harmful third-party content but then allegedly failed to do so.

Similarly, in *Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 43 (Wash. Ct. App. 2001), the court addressed and rejected the exact same argument that the Plaintiff makes in her opposition here. In that case, the plaintiff alleged that Amazon.com "promised to remove" allegedly tortious reviews, but then "failed to do so, and reposted the reviews rather than deleting them."

*Id.* at 41. Mr. Schneider, like the Plaintiff here, asserted that his claim was based not on the posting of the content, but instead on Amazon.com's broken promise. *Id.* Pointing to the plain language of Section 230 as well as to *Zeran*, the *Schneider* court held that Section 230 barred the plaintiff's claim. *Id.* at 41-42. Because the "broken promise" claims in *Schneider* were at bottom based on an alleged "failure to remove the posting," they necessarily were based on Amazon.com's "exercise of editorial discretion" and therefore ran afoul of Section 230's prohibition on publisher liability. *Id.* at 42. Just like the plaintiffs in *Zeran*, *Carafano*, *Schneider*, and every other case in which Section 230 has been successfully asserted, the Plaintiff in this case is seeking to hold Yahoo! liable for its alleged failure to fulfill the quintessential duty of a publisher to block, remove, or retract harmful third-party content.

Obviously concerned that this wealth of precedent bars her claim, Plaintiff labors to suggest that the harm for which she is suing has nothing to do with the third-party profiles and the resulting harassment she allegedly suffered, but instead stems *entirely* from her distress that Yahoo! allegedly failed to fulfill its promise. (Pl. Opp. at 9.) This is sophistry. Plaintiff's own Complaint makes clear that all of her alleged damages stemmed from the allegedly tortious content that was posted to the Yahoo! service by her ex-boyfriend and the consequent harassment, and not because she was disappointed in Yahoo!'s purported nonperformance. Without the continued availability of the profiles, she would have suffered no harm and thus have no claim. This is obvious as a matter of common sense, and it is also what Plaintiff herself actually alleges:

- "The removal of the profiles would have protected Plaintiff from the subsequent injuries she suffered" and "the removal of the profiles [was] necessary for the protection of Plaintiff." (Compl. ¶ 9.)

- Yahoo! breached its supposed "duty" when it "negligently and carelessly failed *to remove* the unauthorized profiles and *prohibit them from being posted again*." (*Id.* ¶ 9 (emphasis added).)

- "[A]s a direct and proximate result of Defendant's negligence, while Plaintiff was waiting for Defendant to provide assistance to Plaintiff, Plaintiff was sexually harassed by strange men over her work email, work telephone and in person at work." (*Id.* ¶ 10.)

- As a "direct and proximate result of Defendant's negligence," "nude pictures of Plaintiff were available to be viewed" on the Yahoo! service. (*Id.* ¶ 10.)

- Plaintiff is seeking to recover for, among other things, "injury to her personal and professional reputation." (*Id.* ¶ 11.) By definition, that form of injury could have arisen only from the publication (or continued publication) of the third-party profiles.

Ultimately, Plaintiff alleges that Yahoo! breached a duty to block, screen, remove, or otherwise edit third-party content, and that she was harmed by that alleged breach. Under the plain language of Section 230 and the law of this Circuit, such claims treat Yahoo! as the publisher or speaker of the third-party content and accordingly are barred.

### B. Plaintiff Is Not Helped by the Unpublished and Aberrational *Barrett* Decision.

The remainder of Plaintiff's argument against Section 230 immunity (Pl. Opp. at 9-13) rests almost entirely on *Barrett v. Rosenthal*, 9 Cal. Rptr. 3d 142 (Cal. App. 2004), on which Plaintiff relies to suggest both that all other courts have misconstrued Section 230 and that the immunity is subject to an exception for so-called "distributor liability." But this reliance only highlights the weakness of her claim: *Barrett* has been depublished and is not even citable in California courts, and in any event is unquestionably an outlier whose interpretation of Section 230 is contrary to that of every other court, including the Ninth Circuit, and cannot be squared with the statutory language.

As an initial matter, the *Barrett* decision is not good authority. Because the California Supreme Court granted a petition for review in *Barrett*, the appellate court's opinion is now

deemed to be depublished. *See* Cal. Rules of Court 29.3(b)(3), 976(d)(1); *Quintano v. Mercury Casualty Co.*, 906 P.2d 1057, 1068 n.6 (Cal. 1995) ("our grant of review had the effect of depublishing [the] opinion" of the Court of Appeal).[1/] As a result, the opinion *may not be cited*. Cal. Rules of Court 977(a). As another district court within the Ninth Circuit recently observed, "[s]ince the California Supreme Court has granted review of this case, *Barrett* may not be relied on as precedent." *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1111 n.28 (C.D. Cal. 2004).

In any event, *Barrett* is directly contrary to all the other numerous cases interpreting Section 230, including the binding precedent of the Ninth Circuit. *See, e.g., Batzel*, 333 F.3d 1018; *Carafano*, 339 F.3d 1119. Indeed, *Barrett* explicitly recognized this fact. *See Barrett*, 9 Cal. Rptr. 3d at 145 n. 4 ("our analysis of the federal immunity differs from that of the *Batzel* court"). In particular, the *Barrett* court departed from established precedent and the plain meaning of the statute in connection with both subjects for which the Plaintiff seeks to rely on *Barrett*: the intent of the statute and its application to so-called "distributor liability."

1.     **The Prevailing Interpretation of Section 230 Is Consistent with Congress's Intent and Policy Goals.**

In its opening brief, Yahoo! explained that both the statute's own terms — in particular its extensive preamble — and a large body of precedent, including decisions of the Ninth Circuit, establish that Section 230 has two core policy goals: (i) to encourage the continued development of vibrant speech on the Internet, and (ii) to encourage service providers to engage in robust self-

---

[1/]     Plaintiff notes that Yahoo! was part of a coalition of *amici* who urged the California Supreme Court to depublish the *Barrett* opinion. (Pl. Opp. at 7-8 n.2.) That request was rendered moot when the California Supreme Court granted the petition for review, which automatically had the effect of depublishing the intermediate appellate opinion.

regulatory efforts without fear that such efforts would increase the risk of liability. (Yahoo! Mem. at 17-23.) Yahoo! further explained that Plaintiff's complaint here would undermine both of these goals. (*Id.*)

In response, Plaintiff contends that Yahoo! has "misconstrue[d]" Congress's intent and accuses the courts that have agreed that Section 230 provides broad immunity of having somehow "manipulated" the statute. (Pl. Opp. at 9-12.) Citing the depublished decision in *Barrett*, Plaintiff asserts that the courts' articulation of Section 230's scope is "inconsistent" with what she sees as the real "purpose" of the statute. (*Id.* at 10.) According to her, because the Communications Decency Act was intended to "protect minors from harmful material on the Internet," Section 230(c) should not be read as a source of immunity at all, but should instead be construed to "encourag[e] interactive service providers to remove offensive material." (*Id.* at 10-11.)

Plaintiff's analysis is wrong in two fundamental respects: As the statutory preamble makes clear, Section 230 is intended to serve goals *in addition* to the goal of protecting minors. Further, the immunity *does* serve to protect minors from harmful material by freeing interactive service providers to engage in self-regulation to monitor and block such content. The Ninth Circuit in *Batzel* looked closely at Section 230's language and legislative history and concluded, like numerous other courts, that the broad immunity embraced by the courts is consistent with the language and purpose of the statute. *See Batzel*, 333 F.3d at 1027-29. Based on its analysis, the Ninth Circuit explained that Congress's "[f]irst" goal in passing Section 230 was "to encourage the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce." *Id.* at 1027. Congress's "second reason for enacting § 230(c) was to encourage interactive computer services and users of such services to self-police

the Internet for obscenity and other offensive material, so as to aid parents in limiting their children's access to such material." *Id.* at 1028.

As Yahoo! explained, courts have rightly concluded that affording service providers with broad immunity from claims arising from third-party content serves both of these goals. Such immunity eliminates the risk of potentially crushing liability that would otherwise accompany the offering of such services — a risk that could cause service providers to remove third-party content on the first sign of a complaint or to decide not to offer the forums for third-party communications in the first place. (Yahoo! Mem. at 18-20.) At the same time, immunity frees service providers to engage in self-regulation without fear that those very efforts would supply them with notification or knowledge that could itself be a predicate for holding them liable for harmful third-party content. (*Id.* at 20-23.)

Plaintiff's assertion that "court cases are beginning to follow" the views of academic commentators who have criticized *Zeran* and its progeny (Pl. Opp. at 12) is unfounded. Not a single published decision has embraced those views. Nor can Plaintiff get any mileage out of her unsubstantiated claim that "[t]he pendulum of legal scholarship has swung away from the broad immunity championed by *Zeran*." (*Id.* at 12.) In *Batzel*, the Ninth Circuit considered and rejected the views of academic critics who had questioned *Zeran* and its progeny based on the "apparent tension" between the two goals that the courts have attributed to the statute. 333 F.3d at 1028. The Ninth Circuit court faulted "[t]hese critics [for] fail[ing] to recognize that laws often have more than one goal in mind, and that it is not uncommon for these purposes to look in opposite directions." *Id.* Indeed, "[t]he need to balance competing values is a primary impetus for enacting legislation," and "[t]ension within statutes is often not a defect but an indication that the legislature was *doing its job.*" *Id.* (emphasis added). The Ninth Circuit could not have been

more direct in rejecting the narrow view of Section 230 that the Plaintiff here now espouses: "[E]ven though the CDA overall may have had the purpose of restricting content, there is little doubt that [Section 230] sought to further First Amendment and e-commerce interests . . . while also promoting the protection of minors." *Id.*

## 2. Plaintiff's Embrace of the So-Called "Distributor Liability" Exception is Completely Misplaced.

Plaintiff also latches onto the *Barrett* court's assertion that Section 230 does not bar a class of claims that supposedly treat an interactive computer service as a "distributor" but not as a "publisher or speaker." (Pl. Opp. at 12-13.) According to Plaintiff, because so-called "distributor liability is a viable exception to the Communication Decency Act's gambit [sic] of immunity," so, too, is her theory of "failure to fulfill an affirmative duty" a potential exception. (*Id.* at 13.) Curiously, Plaintiff does not assert that her claim against Yahoo! falls within this purported "distributor liability" exception. Rather, she seems to suggest that the existence of one such exception should pave the way for a court to find another exception into which her claim would fit, but she provides no explanation for why or how that would be so. As a result, it is not at all clear what support Plaintiff seeks to draw from the *Barrett* court's depublished analysis of "distributor liability."

What is clear, however, is that *Barrett* erred in concluding that there is a class of liability dubbed "distributor liability" that may be imposed on an online intermediary such as Yahoo! without treating it as a "publisher" in contravention of Section 230(c)(1). The *Barrett* court posited that "distributor liability" is a distinct form of liability that may be imposed on entities, such as newstands and bookstores, that distribute large quantities of third-party material. Under pre-existing case law, it generally was recognized that such entities could not be held liable for tortious or unlawful third-party content that they disseminate unless they "kn[e]w or ha[d] reason

to know" of the particular content at issue and its unlawful nature. 9 Cal. Rptr. 3d at 150-52.

Because such "distributors" may be subject to liability only if this heightened level of "scienter"

is established, the *Barrett* court reasoned, imposing such liability on such entities treats them as

"distributors" rather than "publishers" and therefore falls outside the ambit of Section 230. *Id.*

    With the exception of the depublished decision in *Barrett*, however, the courts that have

considered this question (including two other California courts of appeal) have *consistently*

*rejected* this argument, and have confirmed that "distributor liability" is "merely a subset, or a

species, of publisher liability, and is therefore also foreclosed by § 230." *See Zeran*, 129 F.3d at

332; *see also Perfect 10*, 340 F. Supp. 2d at 1111 ("[E]ven if the Defendants are considered

distributors rather than publishers, the CDA immunities would still apply"); *PatentWizard, Inc.*

*v. Kinko's Inc.*, 163 F. Supp. 2d 1069, 1071 (D.S.D. 2001) ("In enacting § 230, Congress meant

to insulate distributors as well as publishers from liability for defamation."); *Blumenthal v.*

*Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998) (in enacting Section 230, "Congress made no

distinction between publishers and distributors in providing immunity from liability"); *Ben Ezra,*

*Weinstein & Co. v. America Online, Inc.*, No. 97-485 LH/LFG, 1999 WL 727402, at *2 (D.N.M.

March 1, 1999) (Section 230 applies to "traditional publisher or distributor liability for

defamatory statements on computer services like Defendant AOLs [sic]" (emphasis added)),

*aff'd*, 206 F.3d 980 (10th Cir. 2000); *Doe v. America Online, Inc.*, 783 So. 2d 1010, 1016-17

(Fla. 2001) (agreeing with *Zeran* that Section 230 applied to claims based on so-called

"distributor" liability); *Barrett v. Fonorow*, 799 N.E.2d 916, 924 (Ill. App. 2003) (rejecting

argument that Section 230 "immunize[d] publishers but not distributors"). *Gentry v. eBay, Inc.*,

121 Cal. Rptr. 2d 703, 716 n.10 (Ct. App. 2002) (rejecting argument that Section 230 "does not

immunize interactive computer service providers that act as distributors"); *Kathleen R. v. City of*

*Livermore*, 104 Cal. Rptr. 2d 772, 778 n.3 (Ct. App. 2001) (recognizing that Section 230 immunity extends to claims based on so-called "distributor" liability).

Although the Ninth Circuit has not had to squarely decide this question,[2] it has recognized "that, so far, every court to reach the issue has decided that Congress intended to immunize both distributors and publishers." *Batzel*, 333 F.3d at 1027 n.10. And there seems little doubt that the Ninth Circuit will reject the distinction urged by the *Barrett* court and agree with the majority approach. As set forth above, the Ninth Circuit explicitly "joined the consensus" of the courts embracing the broad view of Section 230 and concluded that service providers "receive[] *full immunity* regardless of the specific editing or selection process" related to the content. *Carafano*, 339 F.3d at 1124. The concept of "distributor liability," in which a defendant may be held liable based on an allegation that it "knew or should have known" about the nature of the content at issue, is simply inconsistent with the broad immunity embraced by the Ninth Circuit.

The proposition that so-called "distributor liability" escapes the bar of Section 230 not only has been roundly rejected by courts, but is also at odds with settled common law doctrine. To be sure, the general rule is that distributors (such as newsstands and bookstores) cannot be held liable for harmful content "in the absence of proof that they knew or had reason to know of the existence" of harmful content in the material they distribute. *Zeran*, 129 F.3d at 331. But this is a form of special *protection* for distributors — ultimately derived from the First Amendment — that requires a special threshold showing before they can be treated as the

---

[2]    *See Batzel*, 333 F.3d at 1027 n.10 (acknowledging the view of "some commentators" that Section 230 does not apply to so-called "distributor" liability, but "not decid[ing]" the question because the plaintiff did not urge the distinction).

publisher or speaker of third-party information.[3/] *Barrett*'s attempt to characterize this special

*protection* from liability as itself representing a separate and distinct form of *liability* would

make no sense. Rather, as *Zeran* and other cases have squarely held, "distributor liability" is

"merely a subset, or a species, of publisher liability." *See id.* at 332.

Finally, *Barrett*'s suggestion that Section 230 immunity does not apply to service

providers who knew or should have known of the harmful content is contrary to Section 230's

clear purposes. As Congress and courts throughout the country have all understood, a legal

regime in which providers of interactive services could be subject to notice-based liability for

third-party content would create powerful incentives for them to remove third-party material at

the slightest sign of a complaint from anyone in order to minimize the risk of a lawsuit —

whether or not the complaint is legitimate. Such a standard would have an "obvious chilling

effect," particularly on controversial speech. *Zeran*, 129 F.3d at 330-31; *Batzel*, 333 F.3d at

1027-28 ("Making interactive computer services and their users liable for the speech of third

parties would severely restrict the information available on the Internet."). Such notice-based

liability also would *discourage* self-regulation, because service providers could be liable for

anything a jury determines they *should have* uncovered — that is, "had reason to know" about —

in the course of their efforts to police their service, even if they had overlooked and not removed

the unlawful content. Under such a regime, service providers would have strong disincentives to

conduct any self-policing whatsoever, because such activity would itself likely supply them with

---

[3/]     The U.S. Supreme Court has recognized that, absent the requisite fault/scienter, the First
Amendment prohibits holding persons or entities who are intermediaries for third-party content
liable for the unlawful nature of any such content. *See Smith v. California* 361 U.S. 147, 152-53
(1959) (prohibiting prosecution of bookseller for obscenity violation absent showing of
knowledge of unlawful contents).

the kind of "notice" that would subject them to potential liability. *See, e.g.*, *Batzel*, 333 F.3d at 1029 ("If efforts to review and omit third-party defamatory, obscene or inappropriate material make a computer service provider or user liable for posted speech, then website operators and Internet service providers are likely to abandon efforts to eliminate such material from their site."). Congress designed Section 230 to remove exactly these sorts of disincentives.

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM AS A MATTER OF STATE LAW.

As Yahoo! explained in its initial memorandum, even in the absence of Section 230's protection, Plaintiff's claim would fail because she has not alleged either that Yahoo!'s supposed promise to remove the offensive profiles increased her risk of being harmed or that she reasonably relied to her detriment on Yahoo!'s alleged undertaking by foregoing other means of obtaining assistance. (Yahoo! Mem. at 23-27.) While Plaintiff spends several pages of her brief quoting and recounting from the Restatement and various cases (Pl. Opp. at 4-7), she does not ever confront this fundamental failing, much less overcome it.

Plaintiff acknowledges (*id.* at 4-7) that her claim is based on application of the rule in Section 323 of the Restatement (Second) of Torts.[4/] To prevail on that theory of liability, a plaintiff must show that (1) the defendant's failure to follow through on the undertaking "increase[d] the risk" of harm to the plaintiff or (2) "the harm [was] suffered *because of* the [plaintiff's] *reliance* upon the undertaking." Restatement (Second) of Torts § 323 (1965) (emphasis added). Therefore, merely alleging that Yahoo! failed to exercise reasonable care in

---

[4/]     While Plaintiff asserts that her claim is governed by Oregon law (Pl. Opp. at 5), as Yahoo! previously explained, it might instead by governed by California law. (Yahoo! Mem. at 24 n.9.) The Court need not resolve the choice of law issue on this motion, however, because the basic Restatement test applies in both jurisdictions.

performing an undertaking is not enough: to state a claim, Plaintiff would have to further allege

that Yahoo!'s undertaking "put [her] in a worse position than [she] was in before." Restatement

(Second) of Torts § 323 cmt. c; *see also McDonald v. Title Ins. Co. of Or.*, 621 P.2d 654, 658

(Or. Ct. App. 1980) (to prevail on this theory, a plaintiff must "allege in some way that the

defendant's action placed him in a worse position than he would have been without the aid

given"); *see also* Restatement (Second) of Torts § 323 cmt. d (liability for mere nonperformance

of gratuitous undertaking appropriate only if the "breach of [the] promise . . . has induced

reliance *and so caused harm*" (emphasis added)).

In its opening memorandum, Yahoo! explained that Plaintiff had failed to allege any fact

that, if true, would suggest that Yahoo!'s alleged promise to remove the offending profiles put

her in any "worse position" than she would have been had Yahoo! made no such promise.

Taking the Complaint at face value, Yahoo!'s actions — at worst — maintained the status quo

and did not increase the risk of harm to Plaintiff. (Yahoo! Mem. at 25-26.) The Complaint also

fails to identify any action that Plaintiff either took or did not take in reliance on Yahoo!'s

alleged undertaking, much less any action of reliance that caused her any detriment. (*Id.* at 26-

27.)

Plaintiff apparently concedes that Yahoo! did not increase the risk of harm through its

alleged nonperformance, but now insists that she somehow "relied" upon Yahoo!'s alleged

undertaking. (Pl. Opp. At 2.) But Plaintiff can avoid dismissal only if she alleges that "in

reliance upon the undertaking, [she] ha[d] been induced to forego other opportunities of

obtaining assistance." Restatement (Second) of Torts § 323 cmt. c. While the Complaint baldly

asserts that she "made no other arrangements for assistance" (Compl. ¶ 8), it does not suggest

what other arrangement she would have or even could have made if Yahoo!'s alleged

undertaking to remove profiles had not been made.  And given another chance in her opposition

to assert that she would have taken some other affirmative steps to seek assistance, she does not

even identify any hypothetical "arrangements" she could or would have made to remove the

profiles.  Indeed, she simply repeats the Complaint's conclusory assertion that "she relied on

Defendant's promise to remove the unauthorized profiles and therefore did not make any other

arrangements for their removal."  (Pl. Opp. at 2.)

On a motion to dismiss, the Court is not "required to accept as true allegations that are

merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v.

Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  That is all Plaintiff has supplied here.

Her allegations provide no basis at all (much less a reasonable basis) for inferring that she

detrimentally relied on Yahoo!'s alleged undertaking.  That is especially true given her glaring

failure to identify any "alternative arrangements" that she either had taken during the months that

the profiles were causing her injury or would have pursued but did not in the months after the

alleged undertaking.

At bottom, Plaintiff alleges only that she was disappointed by Yahoo!'s supposed failure

to follow through on an alleged non-contractual undertaking, and she is seeking to enforce that

alleged undertaking in the absence of any detrimental reliance upon it.  Under the operable state

law, that claim is untenable.

## CONCLUSION

For the foregoing reasons and those set forth in Yahoo!'s initial memorandum, the

Complaint should be dismissed with prejudice.

Respectfully submitted,
WILMER CUTLER PICKERING
HALE AND DORR LLP


/s/ Patrick J. Carome

*Of Counsel*
Reginald Davis
Eulonda Skyles
Yahoo! Inc.
701 First Avenue
Sunnyvale, CA 94086

Patrick J. Carome
E-mail:patrick.carome@wilmerhale.com
Samir Jain
E-mail:samir.jain@wilmerhale.com
2445 M Street, NW
Washington, DC 20037
Telephone:    (202) 663-6000
Facsimile:    (202) 663-6363

COSGRAVE VERGEER KESTER LLP
Jeffrey A. Johnson, OSB No. 82292
805 SW Broadway, 8th Floor
Portland, OR 97205
Telephone: (503) 323-9000
Fax: (503) 323-9019
E-mail: jjohnson@cvk-law.com


*Counsel for Yahoo! Inc.*

September 28, 2005

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing Defendant's Reply

in Support of its Motion to Dismiss the Complaint on the date indicated below by electronic

mail.

I further certify that the electronic service included the following attorney:

Thomas R. Rask III
Kell, Alterman & Runstein, LLP
520 SW Yamhill, Suite 600
Portland, OR
Tel: (503) 222-3531
Fax: (503) 227-2980

*Of Attorneys for Plaintiff*

DATED: September 28, 2005

/s/ Jeffrey A. Johnson
Jeffrey A. Johnson